UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-2293-DMG (JCx) | Date | May 13, 2021 |
| Title | *Jasmine Brown v. BQ Operations Holding, LLC, et al.* | Page | 1 of 5 |

Present: The Honorable  DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [20]**

On February 3, 2021, Plaintiff Jasmine Brown filed a Complaint in the Los Angeles County Superior Court against Defendants BQ Operations Holding, LLC; Sunbridge Hallmark Health Services, LLC; Fountain View Subacute and Nursing Center, LLC; Genesis Healthcare; Genesis Healthcare, Inc.; and GHC Payroll, LLC, alleging violation California's Unfair Competition Law ("UCL") and the following violations of the California Labor Code: (1) failure to provide meal periods; (2) failure to permit rest breaks; (3) failure to provide accurate wage statements; (4) failure to indemnify; (5) wage statement penalties; and (6) waiting time penalties. Not. of Removal, Ex. A (Compl.) [Doc. # 1-1]. Plaintiff brings this action on behalf of the following proposed class: "All individuals Defendants employed in California as hourly employees including, but not limited to, certified nursing assistants ("CNAs"), restorative nursing assistants ("RNAs"), and persons in comparable positions at any time during the period beginning four years prior to the filing of this action and ending on the date that final judgment is entered in this action." *Id.* at ¶ 15.

On or about March 15, 2021, Defendants removed the action to this Court, asserting original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). [Doc. # 1.] On April 14, 2021, Plaintiff filed the instant motion to remand ("MTR") the case to state court on the ground that the amount in controversy does not exceed $5 million, as required for CAFA jurisdiction. [Doc. # 20.] The MTR is fully briefed. [Doc. ## 21, 23.]

For the reasons stated below, the Court **GRANTS** the motion.

**I.
LEGAL STANDARD**

CAFA affords district courts jurisdiction "over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the

UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-2293-DMG (JCx) | Date | May 13, 2021 |
| Title | *Jasmine Brown v. BQ Operations Holding, LLC, et al.* | Page | 2 of 5 |

aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). Pursuant to 28 U.S.C. section 1441(a), an action may be removed from a state court to a federal district court if the latter would have had "original jurisdiction" over the action had it been filed in that court.

If a complaint does not specify a particular amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant "bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million . . . ." *Id.* at 1197. "[R]emoval 'cannot be based simply upon conclusory allegations where the [complaint] is silent'" as to the amount of damages." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

**II.
DISCUSSION**

Plaintiff argues that Defendants have not sufficiently shown that the amount in controversy exceeds the $5 million jurisdictional threshold for CAFA.

Defendants assert that the amount in controversy is $7,631,063.62. *See* Not. of Removal at ¶ 39. This figure is comprised of the following items: (1) $1,941,979.25 for meal period violations, (2) $1,941,979.25 for rest period violations, (3) $1,759,142.40 for waiting time penalties, (4) $461,750 for inaccurate wage statements, and (5) $1,526,212.72 in attorneys' fees. *See id.* at ¶¶ 45, 51, 58, 64, 67; Opp. at 17 n.4 (updating calculations). Item (1) is predicated on the assertion that each member of the putative class suffered two meal period violations per workweek, whereas item (2) depends upon Defendants' assumption that each proposed class member suffered two rest period violations per workweek. *See* Not. of Removal at ¶¶ 45, 51. Further, Defendants assert that item (5) is a reasonable estimation of Plaintiff's recoverable attorneys' fees because "[t]he attorneys' fees benchmark in the Ninth Circuit is 25 percent." *Id.* at ¶ 66.

The Complaint does not specify the frequency of the alleged meal or rest break violations and alleges only that "Defendants maintained a policy, practice, or a lack of a policy which resulted in Defendants not providing Plaintiff and the Class" with all timely meal periods, rest periods, or wages for missed meals or rest periods. Compl. at ¶¶ 42-43, 52-53. Defendants rely on these allegations and the declarations of Gwendolyn Eagen, Vice President for Corporate Human Resources of one Defendant and agent for two others, to assume two meal period

UNITED STATES DISTRICT COURT   JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-2293-DMG (JCx) | Date | May 13, 2021 |
|---|---|---|---|
| Title | *Jasmine Brown v. BQ Operations Holding, LLC, et al.* | Page | 3 of 5 |

violations and two rest break violations per workweek, per putative class member. But Eagen initially attests only to the number of putative class members, their weighted average hourly rate of pay, and the number of workweeks these employees worked. *See* Eagen Decl. at ¶¶ 9-14 [Doc. # 1-6]. Eagen's supplemental declaration contains additional facts regarding the minimum shift lengths of putative class members who worked full-time and part-time, including that the minimum shift length was 7.5 hours, and some employees worked 12-hour shifts. *See* Eagen Supp. Decl. at ¶¶ 6-17 [Doc. # 21-2]. None of Defendants' evidence, or allegations in Plaintiff's Complaint, supports an assumption of two meal period violations and two rest period violations every single week for every full-time and part-time hourly employee at Defendants' facilities. Consequently, Defendants' calculation of items (1) and (2) rests on "mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197; *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (rejecting the defendants' "assumption that each employee missed two rest periods per week" because "the only evidence the defendants proffer[ed] to support their calculation of the controversy [was] a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages").

The authorities upon which Defendants rely do not undermine this conclusion. *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019), involved a *sua sponte* remand, not a contested motion to remand. "[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Id.* at 922 (quoting *Ibarra*, 775 F.3d at 1197). Only when removal jurisdiction is challenged does it become Defendants' burden to show by a preponderance of the evidence, "some reasonable ground" underlying their assumptions about the rates of violation. *Ibarra*, 775 F.3d at 1199; *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("Evidence establishing the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation."). Another case Defendants cite, *Black v. T-Mobile USA, Inc.*, No. CV 17-04151-HSG, 2017 WL 5257110 (N.D. Cal. Nov. 2, 2017), found that in calculating the amount in controversy of wage and hour claims, "Defendant's extrapolation from Plaintiff's average work schedule is reasonable here in light of the other evidence in the record that indicates Plaintiff and the putative class worked similar schedules." *Id.* at *4 (citing *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (finding removal proper where the defendant relied on the named plaintiffs' schedules in calculating the amount in controversy)).

In this case, by contrast, the only excerpt of any employee's schedule on the record is named Plaintiff's, which indicates that she sometimes worked shorter than 7.5-hour shifts, and worked less than 8 hours on each reported day. *See* Reply, Ex. A [Doc. # 23-1]. She therefore

UNITED STATES DISTRICT COURT   JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-2293-DMG (JCx) | Date | May 13, 2021 |
|---|---|---|---|
| Title | *Jasmine Brown v. BQ Operations Holding, LLC, et al.* | Page | 4 of 5 |

would not be eligible for the same number of meal or rest periods as an employee working 12-hour shifts. Relying on Plaintiff's schedule, it is not reasonable to assume she experienced two meal and rest period violations per week, or to extrapolate that other putative class members did.

Assuming *arguendo* that an estimate of one meal period and one rest period violation per workweek per proposed class member is appropriate, then the putative class's (1) potential meal period violations would be $970,989.63 and (2) potential rest period violation would be $970,989.63. Combined with the sums for (3) and (4), for waiting time penalties and inaccurate wage statements, the total becomes $4,162,871.65.[1]

As for the final item (5), Defendants assume without discussion that the attorneys' fee award would amount to 25% of the total class recovery, even though the Ninth Circuit has refused to adopt a *per se* rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018). Furthermore, Defendants do not attempt to calculate Plaintiff's counsel's lodestar. *See* Opp. at 22. Instead, they cite to wage and hour class action settlement approval orders in which Plaintiff's counsel was awarded 33% of the total settlement amount—or $150,000—in one, and 25% of the total settlement amount—or $133,750—in the other. *Id.* (citing *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. ED CV 13-00398-VAP, 2014 WL 2967475, at *6 (C.D. Cal. June 25, 2014) and *Clarke v. Insight Glob., Inc.*, No. CV 13-0357-H (BLM), 2015 WL 13828417, at *1 (S.D. Cal. Jan. 5, 2015)). The cited examples make clear why a 25% fee calculation of the *maximum possible recovery*, as opposed to likely recovery or lodestar amount, is not a reasonable figure with which to calculate the amount in controversy. The Court sees no reason to assume at this point that the attorneys' fees in this action will amount to $1.5 million, as Defendants suggest, rather than the $150,000 or less previously awarded in other wage and hour actions brought by this counsel.

Therefore, Defendants have failed to discharge their burden of proving by a preponderance of the evidence that Plaintiff's attorneys' fee award would cause the amount in controversy to exceed the $5 million jurisdictional threshold.

### III.
### CONCLUSION

In light of the foregoing and the strong presumption against removal jurisdiction, the Court **GRANTS** Plaintiff's MTR and **REMANDS** this case to Los Angeles County Superior

---

[1] The Court assumes, without deciding, that Defendants' calculations of items (3) and (4) are accurate.

UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA  
CIVIL MINUTES—GENERAL

JS-6 / REMAND

| Case No. | CV 21-2293-DMG (JCx) | Date | May 13, 2021 |
|---|---|---|---|
| Title | *Jasmine Brown v. BQ Operations Holding, LLC, et al.* | Page | 5 of 5 |

Court for lack of jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The May 14, 2021 hearing and scheduling conference are **VACATED**.

**IT IS SO ORDERED.**